| | | |
|---|---|---|
| JOE R. WILKERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:12-CV-198 |
| | § | |
| BOOMERANG TUBE, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Boomerang Tube, LLC's ("Boomerang") Motion for Summary Judgment (#20), in which it seeks summary judgment on Plaintiff Joe R. Wilkerson's ("Wilkerson") claims for employment discrimination under the Americans with Disabilities Act ("ADA") and workers' compensation retaliation under Texas Labor Code § 451.001. Having considered the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Boomerang's motion for summary judgment should be GRANTED in part and DENIED in part.

I.      Background

        A.      Injury

This case involves claims of employment discrimination and retaliation that Wilkerson allegedly experienced after being injured while working at Boomerang. Wilkerson began his employment with Boomerang on October 27, 2010, as a general laborer/material handler and

began training to become a mill operator in November 2010. Wilkerson was officially promoted to mill operator in February 2011.[1]

On December 13, 2010, Wilkerson sustained a laceration on his left hand while operating the mill. The laceration became infected, and Wilkerson went to the emergency room for treatment on December 15, 2010. The next day, Wilkerson had an appointment with Dr. Paul Redman ("Redman"), a general physician. Wilkerson returned to work on December 17, 2010, on restricted duty with instructions from Redman not to use his left hand, and Wilkerson's supervisor, Richard Barroso ("Barroso"), put Wilkerson back to work at the mill on light duty. That day, Barroso assisted Wilkerson with anything Wilkerson ordinarily would have done with his left hand or with both hands.

While working the evening shift on December 17, 2010, hanging scarf[2] fell on Wilkerson's right hand, requiring another trip to the emergency room for stitches and antibiotics. This injury was reported as a workers' compensation claim.[3] The parties disagree as to whether Wilkerson was released by his physician on December 20, 2010, to return to work on full duty or light duty.

---

[1] In Plaintiff's First Amended Complaint, Wilkerson states that he was employed "as a mill operator on December 13, 2010 when he sustained a laceration to his left hand." Wilkerson's deposition testimony, however, states that he was training to become a mill operator and was not officially promoted until February 2011. It is well established that "pleadings are not summary judgment evidence." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Therefore, the court will consider Wilkerson to be employed as a mill operator as of February 2011.

[2] Scarf is a remnant of the manufacturing process and ranges from "900 to 1333 degrees Fahrenheit when it winds up on [a bead winder.]" Barroso describes scarf as "typically an inch or thinner" and looks like a "really rough-looking razor blade" that "can be extremely long."

[3] Neither party directs the court to the date of the workers' compensation claim. Plaintiff's First Amended Complaint states that a claim was reported for the December 17, 2010, injury. Further, a "Texas Workers' Compensation Work Status Report" was included as an exhibit to Boomerang's safety coordinator, Stephen Chason's ("Chason"), deposition (#21-2). Neither of these documents provides the claim origination date.

Wilkerson alleges he returned to light duty for two weeks, while Boomerang claims Redman released Wilkerson to return to full duty on December 20, 2010.[4]  In any event, Wilkerson remained employed by Boomerang and resumed full duty work as a mill operator until sometime in April 2011,[5] when he popped a ligament in his right hand and, as a result, was placed on light duty in anticipation of a scheduled surgery.

B.    Termination

The condition of Wilkerson's right hand deteriorated, requiring him to have surgery on April 27, 2011.  Prior to his surgery, on April 21, 2011, Wilkerson reported to work on light duty, with directions not to use his right hand.  There is no dispute that Barroso and other Boomerang employees knew of Wilkerson's restrictions.  The parties, however, offer conflicting stories of what happened on April 21, 2011—the day of Wilkerson's termination.

Wilkerson contends that when he arrived at work, Barroso asked him to "start mopping and sweeping offices and moving furniture and stuff around."  After trying for about twenty minutes, Wilkerson decided he would be better able to wipe down some equipment with soap and water, and he headed toward the storeroom.  Barroso intercepted him, however, and told him he needed to pick up the mop bucket, fill it, and begin mopping.  Wilkerson requested a hose instead, to avoid lifting the bucket with one hand, but Barroso denied his request.  Wilkerson tried to fill

---

[4] In Plaintiff's First Amended Complaint, Wilkerson stated that he "was released to work on December 20, 2010. . . . [He] was given pain medication and placed back on full duty operating the mill." Nonetheless, at deposition, Wilkerson stated that he was released back to full duty about two weeks after the second accident.  It is well established that "pleadings are not summary judgment evidence." *Wallace*, 80 F.3d at 1047.  Therefore, the court will consider Wilkerson to be released back to full duty two weeks after his second accident, which occurred on December 17, 2010.

[5] At deposition, Wilkerson could not remember whether he popped a ligament in his hand in early April, around April 7, 2011, or mid-April, just a week before he was terminated on April 21, 2011.

the bucket for about fifteen to twenty minutes until he stopped and went to talk to Barroso. According to Wilkerson, he told Barroso: "Look, I'm not refusing to do this. I'm saying I don't feel safe doing it. I don't feel comfortable with one hand doing it. I'm afraid I'm going to hurt my other hand." Wilkerson then suggested that he wipe down the equipment instead, and Barroso again refused. At some point,[6] Wilkerson asked Barroso if he could work in the storeroom, to which Barroso replied, "No, I feel like I gave you something safe to do that you could do with one hand." After another ten minutes of trying to mop and sweep, Wilkerson went back to Barroso, again telling him he was not refusing orders, but stating that he did not feel safe or comfortable mopping and sweeping. Barroso then asked Wilkerson to wait outside his office, and ten minutes later, Barroso terminated Wilkerson.

Boomerang provides a different account of the events of April 21, 2011. In an e-mail to his supervisors the next day, Barroso states that before Wilkerson's shift, "it was determined that [Barroso] would have [Wilkerson] cleaning the offices, breakrooms, etc." Barroso's e-mail explains that when Wilkerson arrived, the two "discussed the tasks that he was to perform," and Wilkerson left to get supplies and begin work. Fifteen minutes later, Barroso saw that Wilkerson had not begun working and, after approaching him, Wilkerson inquired, "Can't I just go help out in the storeroom like they said I was going to be doing?" Barroso then writes:

> I brought him into the office and explained to him that he did not get to pick out what light duty work he performed and that when we decided the tasks for him, we considered the fact that he had limited use of his hand, and that there was no reason he could not perform what I asked him to do safely. He mentioned that he could not use a mop or broom with one hand, so I told him to go to the storeroom and get some Simple Green and a box of rags and start wiping down all of the restroom and

---

[6] Wilkerson does not make clear at deposition when this request took place, other than stating it happened "the same night . . . when [Barroso] tried to get me to do the mopping and sweeping and stuff."

breakrooms' fixtures and walls. He asked again why he could not just go to the storeroom and work. I told him that he had the option of doing the tasks that I set forth or if he refused to do so, he was being insubordinate, and would give me no choice but to proceed with disciplinary measures and send him home.

After this discussion, Wilkerson left, only to return in ten minutes, saying to Barroso, "I'm just gonna go home because I'm not going to do this stuff with one hand." Barroso emphasized that "going home" meant Wilkerson would face disciplinary action and asked him to wait outside. After consulting with his supervisors on the telephone, Barroso called Wilkerson back into his office and informed Wilkerson that Boomerang was terminating him, effective immediately. At deposition, when asked about the e-mail, Barroso stated: "I did explain to him I fired him for insubordination because I was asking him to do a job that he refused to do." Furthermore, Kenneth Long ("Long"), the General Manager at Boomerang, supported Barroso's testimony:

> I recall that [Barroso] asked me, "Should we let him go work in the storeroom?"
>
> And my response was, "We do not allow employees to pick their tasks that need to be done. We pick them for them. As long as it meets his restrictions, then he needs to take care of the tasks that we assign."
>
> And he said that he was refusing to do that and wanted to go home. And [Barroso] asked me could he terminate him, and I said, "Yes, you can proceed with termination for refusal to do the work."

Following these events, Wilkerson filed suit against Boomerang on April 24, 2012. Wilkerson claims that Boomerang violated the ADA by intentionally discriminating against him because of his disability—his injured right hand. Additionally, Wilkerson claims that Boomerang terminated him in retaliation for his filing a workers' compensation claim in good faith in violation of the ADA and Texas Labor Code § 451.001.

Boomerang responds that Wilkerson's disability and his workers' compensation claim played no role in his termination. Rather, it claims the decision was based on Wilkerson's insubordination for refusing to do the tasks Barroso asked him to perform. Also, contrary to Wilkerson's assertions, Boomerang alleges that Wilkerson is not a "qualified individual" under the ADA and therefore is not entitled to the Act's protections.

Boomerang filed the instant motion on April 11, 2014, contending that there is no issue of material fact to preclude summary judgment on Wilkerson's claims. Specifically, Boomerang alleges that Wilkerson has not produced evidence establishing that he is a qualified individual under the ADA or that his workers' compensation claim played any part in Boomerang's decision to terminate him. Wilkerson responds that fact issues make summary judgment inappropriate.

II. Analysis

A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006). The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523. "[T]he court must review the record 'taken as a whole.'"

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (2012); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux*, 402 F.3d at 540).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the

material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012); *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (internal quotations omitted). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.     Americans with Disabilities Act

The ADA is a federal antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to individuals without a disability.  *See* 42 U.S.C. §§ 12101-12113; 29 C.F.R. § 1630, App.; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001); *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1561 (2012); *Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir. 2001); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999).  The ADA was amended in 2008 by the ADA Amendments Act ("ADAAA"), which "primarily focuses on broadening the definition of 'disability.'"  *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013); *see* ADA Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (codified as amended at 42 U.S.C. §§ 12101-12117 (2012)); *see also Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012); *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009); *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 939 (D.D.C. 2009).  Title I of the Act, which covers employment discrimination, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 701 (2012); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003); *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013); *Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 572 (5th Cir. 2013); *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011).

"The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (citing 42 U.S.C. § 12101 (a)(8), (9)); *see Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 638 (E.D. Tex. 2007).

### 1. Discrimination

To recover on a claim of discrimination under the ADA, a plaintiff must prove that:

(1) he has a disability;

(2) he is qualified for the job; and

(3) he was subject to an adverse employment action because of his disability.

*Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 680 (5th Cir. 2013); *Gober v. Frankel Family Trust*, 537 F. App'x 518, 520 (5th Cir. 2013); *Atkins*, 677 F.3d at 675 (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam)); *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 665-66 (W.D. Tex. 2013).

### a. Existence of Disability

The "threshold requirement" in any case brought under the ADA is a showing that the plaintiff suffers from a disability protected under the Act. *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 267 (5th Cir. 2013); *see Atkins*, 677 F.3d at 675; *Cutrera*, 429 F.3d at 111; *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 613 (5th Cir. 2001). Here, Wilkerson alleges his right hand injury sustained on December 17, 2010, is a disability under the ADA. In its reply brief, Boomerang states, in multiple footnotes, "Boomerang, at all times, denies that Plaintiff's hand injury is a disability as defined by the ADA." Boomerang, however, in

contravention of Rule 56(a), made no such assertion in its motion for summary judgment. *See*
FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or
defense . . . on which summary judgment is sought."). Because Boomerang did not initially put
Wilkerson on notice that it was seeking summary judgment on the grounds that Wilkerson's
evidence was insufficient to establish the disability element, an essential element of his claim,
Boomerang did not meet its "responsibility of informing the district court of the basis for its
motion."[7] *Celotex Corp.*, 477 U.S. at 323. Therefore, the court will not consider Boomerang's
assertion that Wilkerson's injury does not qualify as a disability under the ADA. *See Weber v.
Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 45, 55 (N.D. Tex. 2006) (stating that
"the court can decline to consider an argument raised for the first time in a reply brief");
*McDaniel v. Miss. Baptist Med. Ctr.*, 869 F. Supp. 445, 453 (S.D. Miss. 1994) (noting that "[i]n
the interest of fairness, Defendant should not be allowed to raise new grounds for the first time
in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response");
*Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758,
772 (N.D. Tex. 1990) (stating that "[t]he [defendant] raised its third argument for the first time
in its reply brief and the court will not consider it in deciding the motion to dismiss").

---

[7] Boomerang is not required to negate each element of Wilkerson's claims. Rather, its burden is
to "point out the absence of evidence supporting [Wilkerson's] case." *Malacara v. Garber*, 353 F.3d 393,
404 (5th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th
Cir. 1996)). Nowhere in its motion for summary judgment did Boomerang point out the absence of
evidence supporting Wilkerson's claim that his right hand injury constitutes a disability under the ADA.
Therefore, to the extent that Boomerang's motion is based on Wilkerson's injury not being a disability,
summary judgment is denied. *See Ford-Evans v. Smith*, 206 F. App'x 332, 334 (5th Cir. 2006); *Stults*,
76 F.3d at 656.

b.    Qualified Individual

The ADA defines a "qualified individual" as "an individual who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); *see Neely*, 735 F.3d at 245-46; *Shirley*, 726 F.3d at 680.  The ADA prohibits discrimination on the basis of disability "'to ensure that [such] individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others.'"  *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988)); *see Deas v. River W., L.P.*, 152 F.3d 471, 482 (5th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 284 (1987)).

"While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job."  *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808 (5th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998) (citing 29 C.F.R. § 1630, App. Background); *see Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999); *Franklin v. City of Slidell*, 969 F. Supp. 2d 644, 655 (E.D. La. 2013); *Galvan v. City of Bryan*, 367 F. Supp. 2d 1081, 1090 (S.D. Tex. 2004).  "To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled."  *Foreman*, 117 F.3d at 808; *see Franklin*, 969 F. Supp. 2d at 655; *Galvan*, 367 F. Supp. 2d at 1090.  "The determination of qualification is two-fold:  (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable

accommodation." *Foreman*, 117 F.3d at 810 n.14 (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)); *see Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir.), *cert. denied*, 546 U.S. 1033 (2005). Therefore, to be considered a qualified individual, the plaintiff must show that: (1) he can perform the essential functions of the job despite his disability; or (2) if he is unable to perform the essential functions of the job, that a reasonable accommodation by the employer would enable him to perform those functions. *See Crossley v. CSC Applied Techs., L.L.C.*, ___ F. App'x ___, No. 13-10788, 2014 WL 2119156, at *2 (5th Cir. May 22, 2014) (citing *Turco*, 101 F.3d at 1093); *Gober*, 537 F. App'x at 520; *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 749 (5th Cir. 1996).

In this case, the parties agree that Wilkerson could not perform the essential functions of a mill operator. Indeed, at deposition, Wilkerson admits that on the date he was terminated, he could not have performed mill operator duties "without help." Further, in Wilkerson's responsive brief, he states: "Plaintiff did not concede an inability to perform the essential functions of a mill operator because of his right hand injury. He testified that he could not perform the essential functions of a mill operator without assistance." Therefore, the pivotal question is whether Wilkerson raises a genuine issue of material fact as to the existence of a reasonable accommodation by Boomerang that would have enabled Wilkerson to perform the essential functions.

Wilkerson contends that he would have been able to perform the essential aspects of his job if Boomerang had made reasonable accommodations for his disability. Specifically, he suggests the following accommodations would have allowed him to perform the essential functions: (1) receiving assistance from Barroso; (2) being assigned a trainee; (3) job

14

restructuring, or more specifically, being permitted to wipe down walls and fixtures and perform other tasks; (4) receiving a transfer to a vacant position in the storeroom; or (5) being allowed a short leave of absence. After reviewing the parties' pleadings and submissions, the court concludes that no reasonable accommodation was available that would have allowed Wilkerson to perform the essential duties of a mill operator.

The ADA provides:

The term "reasonable accommodation" may include—

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9); *Feist*, 730 F.3d at 453. In addition to repeating the examples set forth in the statute, the EEOC regulations define the term "reasonable accommodation" as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see US Airways, Inc. v. Barnett*, 535 U.S. 391, 417 (2002); *Feist*, 730 F.3d at 453; *Chevron Phillips Chem. Co., LP*, 570 F.3d at 620-21. Courts interpreting the statute and regulations have held that "a reasonable accommodation is 'a method of accommodation that is reasonable in the run of cases.'" *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) (quoting *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993), *cert. denied*, 511 U.S. 1030 (1994) (interpreting "reasonable accommodation" under the Rehabilitation Act)) (emphasis omitted); *see Keith v. Cnty. of Oakland*,

703 F.3d 918, 927 (6th Cir. 2013) (quoting *Barth*, 2 F.3d 1180); *Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. Coll.*, 360 F. App'x 562, 567 (5th Cir. 2010) (quoting *Riel*, 99 F.3d at 683); *Medrano v. City of San Antonio*, 179 F. App'x 897, 901 (5th Cir. 2006) (citing *US Airways, Inc.*, 535 U.S. at 401).

Because an accommodation must be "reasonable in the run of cases," there is a limitation on the accommodations an employer is required to make. *Riel*, 99 F.3d at 683. The ADA, for example, "does not require an employer to transfer from the disabled employee any of the essential functions of his job" in order to make reasonable accommodation for his disability. *Barber v. Nabors Drilling, U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997); *see Crossley,* 569 F. App'x at 200 (citing *Barber*, 130 F.3d at 709). In addition, where an employer has no part-time positions, the employer need not create such a position to accommodate a disabled employee; nor must it displace a temporary worker to place a disabled worker. *See Moreno v. Brownlee*, 85 F. App'x 23, 28 (5th Cir. 2004); *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 680 (7th Cir. 1998); *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 318 n.11 (5th Cir. 1997), *cert. denied*, 522 U.S. 1084 (1998). Similarly, an employer has no obligation to create a new "light duty" position for a disabled employee. *See Moreno*, 85 F. App'x at 28 ("[T]he Army, at that point, was not required to simply create a position that Moreno could perform."); *Turco*, 101 F.3d at 1094; *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998); *Foreman*, 117 F.3d at 809. Likewise, an employer is not obligated to implement an accommodation that would "result in other employees having to work harder or longer." *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 382 (5th Cir. 2012) (citing *Turco*, 101 F.3d at 1094); *see Kralik v. Durbin*, 130 F.3d 76, 79 (3d Cir. 1997); *Daugherty v. City of El Paso*, 56

F.3d 695, 700 (5th Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996). Hence, the ADA does not require an employer to promote a disabled employee as an accommodation, reassign the employee to an occupied position, create a new position, eliminate essential functions of a job, or assign existing employees or hire new employees to perform abandoned essential functions of a position. *See Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 724 (5th Cir. 2011); *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 53 (5th Cir. 1997); *Turco*, 101 F.3d at 1094; *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996); *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995); *see also* 29 C.F.R. pt. 1630, App. § 1630.2(o).

Additionally, an employer is not obligated to allow a disabled employee to take an indefinite leave of absence for purposes of accommodation. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012); *Burch*, 119 F.3d at 318 n.11; *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Rogers*, 87 F.3d at 759-60; *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 1002 (W.D. Tex. 2012). "'[R]easonable accommodation does not require [an employer] to wait indefinitely for [an employee's] medical conditions to be corrected.'" *Rogers*, 87 F.3d at 760 (emphasis omitted) (quoting *Myers*, 50 F.3d at 283). In essence, "[t]he law does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less." *Turco*, 101 F.3d at 1094 (citing *Daugherty*, 56 F.3d at 700); *accord Foreman*, 117 F.3d at 810.

The court finds that Wilkerson's suggested accommodations are not required under the ADA, as they are unreasonable and would not have enabled him to perform the essential functions of a mill operator. First, Wilkerson's suggestions that Boomerang have either Barroso or a trainee

assist him with the mill operation run afoul of established law providing that it is unreasonable to require an employer to "reassign existing employees to perform those jobs, or hire new employees to do so." *Toronka*, 411 F. App'x at 724 (citing *City of Nacogdoches*, 174 F.3d at 621); *accord Hammond*, 499 F. App'x at 382 (citing *Turco*, 101 F.3d at 1094). Second, Wilkerson's requested accommodation of "job restructuring," which Wilkerson describes as being permitted to wipe down walls and fixtures and perform other tasks is also unwarranted, as it would require Boomerang either to relieve Wilkerson of the essential functions of a mill operator or modify the essential functions, both of which are unreasonable accommodations as a matter of law.[8] *Hammond*, 499 F. App'x at 382 (citing *Turco*, 101 F.3d at 1094); *Toronka*, 411 F. App'x at 724 (citing *City of Nacogdoches*, 174 F.3d at 621); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004). Furthermore, to the extent the job restructuring suggests that someone else would perform Wilkerson's duties as a mill operator during his time on light duty, the Fifth Circuit has determined that such an accommodation would also be unreasonable. *See Barber*, 130 F.3d at 709 ("If it is necessary to transfer any of the essential functions of the toolpusher job to others on the rig, then Barber is not otherwise qualified.").

Third, there is no requirement that Boomerang create a new job in the storeroom for Wilkerson or transfer him to a vacant position in the storeroom when he has not presented a genuine issue of material fact as to whether such a position was available for which he was qualified. *See Turco*, 101 F.3d at 1094; *Amos v. Wheelabrator Coal Servs., Inc.*, 47 F. Supp. 2d

---

[8] Wilkerson cites *Feist* for the proposition that "[r]easonable accommodations are not restricted to modifications that enable performance of essential job functions." *See Feist*, 730 F.3d at 453. In *Feist*, however, the employee's status as a "qualified individual" was not in question, as it is here. *Id*. Rather, the Fifth Circuit was considering only "whether Feist's proposed accommodation was reasonable." *Id*. Therefore, the court did not inquire into whether a reasonable accommodation would have enabled Feist to perform her essential job functions, thus enabling her to bring a claim as a "qualified individual." *Id*.

798, 803 (N.D. Tex. 1998). Wilkerson argues that he has provided sufficient evidence to establish

that there was a vacant position in the storeroom at the time he was terminated. To support this

claim, Wilkerson offers the deposition testimony of Isaac Campos ("Campos"), Boomerang's

Human Resources Manager:

> Q. With regard to the available job openings in April 2011—
> A. Yes, sir.
> Q. —who would be the best person to address that topic?
> A. It would be me, but at that time everything was open. But I — I don't have
> exacts. I would be the one to be able to look at what we had at that time because
> we were growing at that time. We were still in the recruiting phase. So we were
> getting a lot of general help, shipping, you name it, in different positions. And
> some of them, we didn't expand it. You know, we were limited.
> Q. Is it a true statement, Mr. Campos, that in April of 2011, there were many
> available job openings at Boomerang?
> A. Physical labor jobs, yes.

Campos also testified that, in April 2011, most of the jobs were posted on the Internet, and to

determine whether there were specific job openings in April 2011, he would have to look through

the electronic archives.

Wilkerson alleges that Campos's statement that "everything was open" is sufficient to

establish that there was a vacant position in the storeroom to which Wilkerson should have been

transferred and to corroborate Wilkerson's testimony that a vacancy was available. Indeed, when

asked at deposition whether he knew "for a fact" at the time of his termination "that there were

openings in the storeroom," Wilkerson replied, "Yeah, I do," and explained he knew that because

"they were looking for people to hire to put in there." He responded the same way when

questioned a second time:

> Q. [A]nd I'm going to ask you again. Do you know for a fact that there were any
> openings in the storeroom at the time you were terminated?
> A. Yes.
> Q. And the basis of that belief is what?

A. On their website they were still aking [sic] asking for employees for—to fill the position.
Q. In the storeroom?
A. Yes.

Considered together, Campos's deposition testimony corroborates Wilkerson's testimony, and the statements raise a fact issue as to whether there was a vacant storeroom position. Nevertheless, Wilkerson has not provided any evidence that he was qualified for a storeroom position. *See City of Nacogdoches*, 174 F.3d at 622 ("[T]he law requires [an employee] to prove that he is qualified for [the vacant] position. Part of that proof must be more than the worker's self-serving testimony that he could have performed light-duty jobs from a physical standpoint."). The record is devoid of evidence regarding the duties of a storeroom employee, but limited manual dexterity would seem to restrict the range of duties that could be performed. Indeed, the record reflects that employees on light duty who have previously worked in the storeroom have full functionality of their hands, although their mobility may be limited.[9] Furthermore, Wilkerson's bare assertion that similarly situated employees were permitted to work in the storeroom is insufficient to preclude summary judgment, as Wilkerson has not identified any of these individuals or their medical conditions, and, therefore, has not adduced evidence of a suitable comparator. *See Williams v. Square D Co.*, No. Civ. A. 304CV0162D, 2005 WL 2219237, at *4 (N.D. Tex. September 13, 2005). The court also finds that Campos's statement that "everything was open," when considered in the context of the deposition, does not raise a fact

---

[9] At deposition, Richard Cook ("Cook"), a department superintendent, testified that: "we did have a mill person working in the storeroom that was a lower back injury, where she could actually sit down." Boomerang's safety coordinator, Stephen Chason ("Chason") corroborated this testimony, explaining that employees who were "not able to stand" or "were not mobile" were at times employed in the storeroom. He specified that those employees' injuries were "leg, knee, ankle, mobility issues."

issue as to whether Wilkerson would have qualified for a vacant position, if there indeed was one.

Even assuming that Wilkerson qualified for a position in the storeroom, transferring Wilkerson to this position would not have enabled him to perform the essential functions of a mill operator, and, thus, he still would not be protected under the ADA as a "qualified individual." *See Barber*, 130 F.3d at 709 ("We cannot say that he can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions"); *see also Wulff v. Sentara Healthcare, Inc.*, 513 F. App'x 267, 272 (4th Cir. 2013) (per curiam) (finding that the employee "was unable to perform the essential functions of her position. Therefore, the district court was correct to determine, as a matter of law, that she was not a 'qualified individual' and could not support a *prima facie* case of wrongful discharge.") (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001)); *Jones v. Walgreen Co.*, 679 F.3d 9, 19 (1st Cir. 2012) ("Our cases are clear that 'an employer's duty to accommodate does not arise unless (at a bare minimum) the employee is able to perform the essential functions of [her] job with an accommodation.'") (quoting *DeCaro v. Hasbro, Inc.*, 580 F.3d 55, 63 (1st Cir. 2009)).

Finally, courts have consistently held that a request for a leave of absence is not a reasonable accommodation that would allow an individual with a disability to perform the essential functions of his position. *See Amsel*, 464 F. App'x at 400; *Hudson*, 87 F.3d at 1169; *Molina*, 840 F. Supp. 2d at 1002. As a consequence, Wilkerson has not satisfied the second element of a *prima facie* case of disability discrimination because he has failed to establish that he is a

qualified individual under the ADA. Therefore, Wilkerson has not raised a cognizable claim of discrimination under the ADA, and summary judgment on this claim is warranted.[10]

## 2. Retaliation under the ADA

The ADA prohibits discrimination against an employee who has engaged in activity protected by the Act:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). "Retaliation claims are treated the same whether brought under the ADA or Title VII." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997); *see Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012); *A Society Without A Name v. Virginia*, 655 F.3d 342, 352-53 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1960 (2012); *Johnson v. Cleveland City Sch. Bd.*, 344 F. App'x 104, 113 (6th Cir. 2009); *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095-96 (7th Cir.), *cert. denied*, 525 U.S. 869 (1998); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 450 (S.D. Tex. 2010) (citing *Sherrod*, 132 F.3d at 1119).

To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show:

_____

[10] Wilkerson also contends that Boomerang had a duty to engage in an interactive process with him to determine a reasonable accommodation upon learning that Wilkerson was going on light duty and upon his request for an accommodation. Wilkerson argues that Boomerang failed to satisfy this duty and thus failed to provide a reasonable accommodation for Wilkerson under the ADA. Nevertheless, because Wilkerson has not shown himself to be a qualified individual under the ADA, Boomerang's duty to engage in the interactive process and accommodate Wilkerson never came to fruition. *See Middleton v. Ball-Foster Glass Container Co.*, 139 F. Supp. 2d 782, 798 (N.D. Tex. 2001), *aff'd*, 31 F. App'x 835 (5th Cir. 2002). In addition, there is no indication that the interactive process would have yielded any additional alternatives other than those discussed above and deemed inapplicable.

(1)     he engaged in statutorily protected activity;

(2)     an adverse employment action occurred; and

(3)     a causal connection exists between the protected activity and the adverse
employment action.

*See Aldrup*, 274 F.3d at 286; *Seaman*, 179 F.3d at 301; *Talanda*, 140 F.3d at 1095; *Champagne v. Servistar Corp.*, 138 F.3d 7, 12 n.5 (1st Cir. 1998); *Sherrod*, 132 F.3d at 1122 n.8; *Penny*, 128 F.3d at 417; *Krouse*, 126 F.3d at 500.

The plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *See Seaman*, 179 F.3d at 301; *Davidson*, 133 F.3d at 511. If the employee establishes a *prima facie* case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, nonretaliatory reason for its adverse employment action. *See Seaman*, 179 F.3d at 301; *Krouse*, 126 F.3d at 500. "If such a reason is advanced, the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation." *Seaman*, 179 F.3d at 301; *see Talanda*, 140 F.3d at 1096; *Sherrod*, 132 F.3d at 1123; *Penny*, 128 F.3d at 417. "The ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred 'but-for' the protected activity." *Sherrod*, 132 F.3d at 1122; *accord Seaman*, 179 F.3d at 301.

In his complaint, Wilkerson alleges, in addition to his ADA discrimination and state law workers' compensation retaliation claims, that Boomerang retaliated against him "after [he] engaged in protected activity under the ADA." Now, in response to Boomerang's motion for summary judgment, Wilkerson points out that Boomerang "has not sought summary judgment on Plaintiff's claim of retaliation under the [ADA]" and that Boomerang, in its reply brief, "for the first time argues that it is seeking dismissal of Plaintiff's claim of retaliation under the ADA."

Boomerang disagrees, arguing that it sought dismissal of the ADA retaliation claim in its motion for summary judgment. In its reply, Boomerang references its motion's allegations that:

> [A]ll claims under the [ADA] should be dismissed because Plaintiff was not a "qualified individual with a disability" at the time of the alleged discriminatory acts (including termination) pleaded in Plaintiff's Complaint. This is significant because if Plaintiff was not a "qualified individual," he was not entitled to any of the protections of the ADA. Thus, if summary judgment is granted as prayed for, <u>all claims under the ADA</u>, including Plaintiff's claim of retaliation, will be subject to dismissal with prejudice as a matter of law.

(emphasis in original). Boomerang's motion for summary judgment states:

> This is an employment law case in which Plaintiff, Joe R. Wilkerson ("Plaintiff"), contends that he was discriminated against by his former employer, Boomerang, on the basis of an alleged "disability" in violation of the [ADA]. Plaintiff further contends that Boomerang violated *Tex. Lab. Code § 451.001* when Boomerang terminated Plaintiff. In particular, Plaintiff claims Boomerang would not have terminated him but for the Plaintiff's involvement in a worker's compensation claim he filed against Boomerang. Boomerang denies it violated the ADA and/or *Tex. Lab. Code § 451.001* and contends that all of Plaintiff's claims lack validity and should be dismissed.

In the motion's "Statement of the Nature and Stage of the Proceeding," Boomerang failed to mention Wilkerson's ADA retaliation claim. As shown, Boomerang addressed only two of Wilkerson's claims: his ADA discrimination claim and his Texas workers' compensation retaliation claim. Likewise, in its "Statement of the Issues to be Decided by the Court," Boomerang does not reference the ADA retaliation claim. There, in the "Law and Argument" subsection, Boomerang states:

> Boomerang contends that, based on the uncontested material facts of this case, Plaintiff is unable to prove a valid claim under federal or state law. Plaintiff is not entitled to the protections of the ADA because he was not a qualified individual with a disability and there is no evidence to support any claim that he was terminated because of his claim for worker's compensation. As a result, summary judgment is appropriate and all of Plaintiff's claims should be dismissed with prejudice at Plaintiff's costs.

Boomerang then goes on to brief Wilkerson's ADA discrimination claim, concluding by saying: "[Wilkerson] is not a 'qualified individual' entitled to the protections of the ADA. Accordingly, all claims asserted under the ADA cannot be sustained and should be dismissed with prejudice." Boomerang repeats its statement referring to "all of Plaintiff's claims asserted under the ADA" twice more before briefing Wilkerson's state law retaliation claim. Boomerang does not include a separate section discussing Wilkerson's ADA retaliation claim.

As previously discussed, Boomerang, as the movant, must identify each claim on which it seeks summary judgment and direct the court to the absence of evidence supporting a material element of such claims. *See* FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 323; *Malacara*, 353 F.3d at 404; *see also Seastrunk v. Darwell Integrated Tech., Inc.*, No. 3:05-CV-0531-BF, 2009 WL 2705511, at *9 (N.D. Tex. Aug. 27, 2009) ("While not required to produce evidence, a moving defendant may not rely on a mere recitation of the conclusory statement that the record contains no evidence of the elements of a claim.") (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425,440 (5th Cir. 2005); *Ashe v. Corley*, 922 F.2d 540, 544 (5th Cir. 1993). "As to materiality, the substantive law will identify which facts are material." *Tiblier*, 743 F.3d at 1007. Here, Boomerang mischaracterizes Wilkerson's burden of proof on an ADA retaliation claim. "In contrast to an ADA discrimination claim, a plaintiff bringing an ADA retaliation claim need not demonstrate that he has a disability." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 n.1 (5th Cir. 2008) (citing *Krouse*, 126 F.3d at 502). As the court in *Krouse* explains:

> By its own terms, the ADA retaliation provision protects "any individual" who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA. This differs from the scope of the ADA disability discrimination provision, which may be invoked only by a "qualified individual with a disability." An individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA.

*Krouse*, 126 F.3d at 502; *see, e.g.*, *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 (6th Cir. 2011); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001); *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997).

Thus, Boomerang failed to meet its burden as movant on Wilkerson's ADA retaliation claim. The only basis upon which Boomerang arguably moves for summary judgment on Wilkerson's ADA retaliation claim is Wilkerson's purported lack of status as a qualified individual with a disability. Because this status is unnecessary to maintain a claim for retaliation under the ADA, Boomerang has not satisfied its summary judgment burden. Therefore, summary judgment on this claim is not warranted.

C.     Texas Labor Code § 451.001

Section 451.001 of the Texas Labor Code (formerly Article 8307c of the Texas Revised Civil Statutes) creates a statutory exception to the Texas common law, employment-at-will doctrine. *See Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995); *Swearingen v. Owens-Corning Fiberglas Corp.*, 968 F.2d 559, 561 (5th Cir. 1992); *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 660 (Tex. 2012) (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996)); *Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 286 (Tex. App.—El Paso 2012, pet. denied). The statute prohibits an employer from discharging or discriminating against an employee because the employee has filed or pursued a workers' compensation claim in good faith. *See* TEX. LAB. CODE ANN. § 451.001; *Williams v. AT&T Inc.*, 356 F. App'x 761, 767 (5th Cir. 2009); *Klumpe v. IBP, Inc.*, 309 F.3d 279, 282 n.6 (5th Cir. 2002); *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 115 n.1 (5th Cir. 1997); *Burfield*, 51 F.3d at 588; *Safeshred, Inc.*, 365 S.W.3d at 660. Specifically, the statute provides:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

    (1)  filed a workers' compensation claim in good faith;

    (2)  hired a lawyer to represent the employee in a claim;

    (3)  instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

    (4)  testified or is about to testify in a proceeding under Subtitle A.

TEX. LAB. CODE ANN. § 451.001. The Texas Legislature enacted § 451.001 "to protect persons entitled to benefits under the Act and to prevent them from being discharged for seeking to collect those benefits." *In re Poly-America, L.P.*, 262 S.W.3d 337, 350 (Tex. 2008); *accord Trico Tech. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997); *Polansky v. Sw. Airlines Co.*, 75 S.W.3d 99, 103 (Tex. App.—San Antonio 2002, no pet.) "Unless one of the four specific circumstances in the article motivated the employer in discharging or discriminating against the employee, that employee cannot prevail on a claim based on this article." *Burfield*, 51 F.3d at 589; *accord Fenley v. Mrs. Baird's Bakeries, Inc.*, 59 S.W.3d 314, 319 (Tex. App.—Texarkana 2001, pet. denied).

In pursuing a claim under § 451.001, the plaintiff has the burden of establishing a causal nexus between the filing of a workers' compensation claim and his discharge or other adverse action taken by his employer. *See* TEX. LAB. CODE ANN. § 451.002(c) (placing burden of proof on employee); *Williams*, 356 F. App'x at 767; *Burfield*, 51 F.3d at 589-90; *Parham v. Carrier Corp.*, 9 F.3d 383, 386 (5th Cir. 1993); *Willis v. Nucor Corp.*, 282 S.W.3d 536, 543-44 (Tex. App.—Waco 2008, no pet.); *Polansky*, 75 S.W.3d at 103. The plaintiff need not prove that his quest for workers' compensation was the sole reason for his discharge, but he must establish that it was a "contributing factor." *Kinsaire, Inc. v. Melendez*, 416 S.W.3d 898, 906 (Tex. App.—El

Paso 2013, pet. filed) (citing *Cazarez*, 937 S.W.2d at 450); *see See Graef*, 106 F.3d at 116; *Burfield*, 51 F.3d at 590. The Texas Supreme Court has declared that the standard of causation in cases brought under § 451.001 "'should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did.'" *Cazarez*, 937 S.W.2d at 450 (quoting *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)); *accord Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). Nonetheless, the employee need not prove that his protected activity was the sole reason for the employer's adverse action. *See Cazarez*, 937 S.W.2d at 451 n.3; *Hinds*, 904 S.W.2d at 636; *Kingsaire, Inc.*, 416 S.W.3d at 906.

An employee may show causation by direct or circumstantial evidence, including the reasonable inferences that may be drawn from such evidence. *See Burfield*, 51 F.3d at 590; *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 336-37 (S.D. Tex. 2011); *Cazarez*, 937 S.W.2d at 451; *Kingsaire, Inc.*, 416 S.W.3d at 906; *Echostar Satellite L.L.C.*, 394 S.W.3d at 287. Circumstantial evidence sufficient to establish a casual link between termination and filing a workers' compensation claim includes: (1) knowledge of the claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to follow company policy when disciplining an employee who made a claim for workers' compensation; (4) discriminatory treatment of the employee when compared to the treatment of other employees with the same disciplinary problem; and (5) evidence that the stated reason for the discharge was false.[11]

---

[11] The temporal proximity between an employee's workers' compensation claim and the employer's alleged discriminatory action is often material and is considered as an additional factor by some courts. *See Burfield*, 51 F.3d at 689; *Echostar Satellite L.L.C.*, 394 S.W.3d at 289. Neither party in this case, however, provides the court with the date on which Wilkerson filed his workers' compensation claim. Therefore, the court cannot look to temporal proximity when considering Wilkerson's *prima facie* showing, although it is apparent that the time lapse was four months at the most.

*See Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 468 (Tex. App.—El Paso 2012, no pet.) (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77-78 (Tex. App.—Houston [14th Dist.] 1995), *aff'd in part & rev'd in part on other grounds*, 937 S.W.2d 444 (Tex. 1996)); *see also Bergen v. Cont'l Cas. Co.*, 368 F. Supp. 2d 567, 580 (N.D. Tex. 2005); *Echostar Satellite L.L.C.*, 394 S.W.3d at 287. The employee is not required to produce evidence on every factor. *Bergen*, 368 F. Supp. 2d at 580 n.14.

Once the plaintiff has shown a causal link, the employer may rebut the plaintiff's showing by demonstrating that the discharge was actually for a legitimate, non-retaliatory reason unrelated to the plaintiff's pursuit of workers' compensation benefits. *See Trevino v. Ramos*, 197 F.3d 777, 780 (5th Cir. 1999), *cert. denied*, 531 U.S. 1036 (2000); *Reid*, 805 F. Supp. 2d at 337; *Matthews v. City of Houston Fire Dept't*, 609 F. Supp. 2d 631, 649 (S.D. Tex. 2009) (citing *Swearingen*, 968 F.2d at 563); *Armendariz*, 390 S.W.3d at 468; *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67-68 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). For example, "an employer who terminates an employee pursuant to the uniform enforcement of a reasonable absence-control provision will not be liable for retaliatory discharge." *Haggar Clothing Co.*, 164 S.W.3d at 388 (citing *Cazarez*, 937 S.W.2d at 451); *see Kingsaire, Inc.*, 416 S.W.3d at 906-07; *Echostar Satellite L.L.C.*, 394 S.W.3d at 286; *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 131 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). An employer who terminates an employee for violating a work rule or absenteeism policy cannot be held liable for retaliatory discharge, even if the application of the rule or policy adversely affects employees who have pursued workers' compensation claims, as long as the rule or policy is uniformly enforced. *See Cazarez*, 937 S.W.2d at 451.

Furthermore, "[i]n Texas, an employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position." *Burfield*, 51 F.3d at 590 (citing *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534, 540 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (employer not obligated to reinstate a worker who could not lift over 50 pounds after an injury and still had the same pain which caused him to file the workers' compensation claim)); *see Parham*, 9 F.3d at 388-89 (holding that plaintiff had failed to establish a causal nexus where the objective evidence showed that he did not return to work because he was not physically able to perform his job); *Eldridge v. Am. Residential Servs. L.L.C.*, No. 3:04-CV-2073-D, 2006 WL 2035654, at *10 (N.D. Tex. July 19, 2006) (granting summary judgment *sua sponte* on the basis that the employer had a legitimate reason for terminating the employment because the employee could not perform the essential functions of his job); *Guneratne v. St. Mary's Hosp.*, 943 F. Supp. 771, 775 (S.D. Tex. 1996), *aff'd*, 119 F.3d 3 (5th Cir.), *cert. denied*, 522 U.S. 996 (1997) (finding no liability where plaintiff was not able to return to work because she was physically unable to perform the essential function of her job); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 441 (Tex. App.—Waco 2000, pet. denied) (citing *Trevino v. Kent Cnty.*, 936 S.W.2d 488, 493 (Tex. App.—Amarillo 1996, writ denied) (finding that there was sufficient evidence to prove that "Kent County did not reinstate Sylvia as housekeeper solely because she was unable to perform the various tasks required of the job.")).

Upon the employer's demonstration of a legitimate, non-discriminatory reason for termination, the burden shifts once again to the employee to "rais[e] a fact issue on whether the employer's stated reason was a pretext for retaliatory action, or challenge the employer's summary

judgment evidence as failing to prove as a matter of law that the stated reason was legitimate and nondiscriminatory." *Arellano v. Americanos USA, LLC*, 334 S.W.3d 326, 332 (Tex. App.—El Paso 2010, no pet.) (citing *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.)); *accord Bergen*, 368 F. Supp. 2d at 580-81. An employee's subjective beliefs of discriminatory intent, even if presented in affidavit form, "'are no more than conclusions' and do not raise a fact issue precluding summary judgment in a retaliatory discharge action under the Workers' Compensation Law." *Cazarez*, 937 S.W.2d at 452 (quoting *Carrozza*, 876 S.W.2d at 314); *accord Baldwin v. Harris Cnty.*, No. H-04-3822, 2005 WL 6457562, at *5 (S.D. Tex. Nov. 15, 2005).

To establish a *prima facie* case of retaliation, Wilkerson adduces evidence that but for his filing of a workers' compensation claim in good faith, Boomerang would not have terminated his employment as a mill operator. Wilkerson asserts that there is a causal link between the filing of the claim and his termination based on the following factors: (1) "all of the individuals involved in the decision to terminate Mr. Wilkerson had knowledge of the compensation claim;" (2) "Joe Mendez ("Mendez"), the supervisor who acted as a witness when [Wilkerson] was terminated . . . informed him shortly before termination that if he missed any more work again or got hurt he would be fired," thus showing a negative attitude toward Wilkerson's injury; (3) Boomerang failed to follow "established company policies requir[ing] Boomerang to follow a progressive discipline policy;" (4) "other similarly situated employees . . . were permitted to work in the storeroom while he was not;" and (5) Boomerang's stated reason for discharge—insubordination—was false.

Boomerang disputes four of the factors, conceding only the first: that Boomerang was aware of Wilkerson's workers' compensation claim. Boomerang contends that there was no

expression of negative attitude towards Wilkerson's injury, that Boomerang did not fail to adhere to established company policies because "insubordination is misconduct that could warrant immediate termination," that Wilkerson has no evidence regarding any "similarly situated employees" or their presence in the storeroom, and that Wilkerson's insubordination was the actual reason for his discharge.

Although the court agrees with Boomerang that Wilkerson has not adduced evidence sufficient to show that Boomerang permitted similarly situated employees to work in the storeroom or that Mendez's statement expresses a negative attitude toward Wilkerson's injury, the court nonetheless finds that Wilkerson has raised a fact issue regarding proof of a causal connection between the filing of his workers' compensation claim and his subsequent termination. It is undisputed that Boomerang's supervisors knew of Wilkerson's injury, although it is unclear whether they knew of his planned surgery. Furthermore, there is arguably merit in Wilkerson's claim that his alleged insubordination was not the true reason for his termination. The credibility of Wilkerson's testimony that he was not insubordinate and was not refusing to perform the assigned tasks is a fact issue to be determined by the jury. There is an inconsistency between the parties' positions as to the exact duties assigned—sweeping and mopping, as alleged by Wilkerson, or wiping down the walls and equipment with one hand, as asserted by Boomerang. Indeed, the court finds that, when considering whether Wilkerson was refusing to do all of the tasks assigned to him—as Boomerang argues—or whether he was willing but not able to perform some of the light duty tasks—as Wilkerson insists—reasonable minds could differ. Therefore, Wilkerson has made a *prima facie* showing of a causal connection between his termination and his filing of a workers' compensation claim.

As a consequence, the burden shifts to Boomerang to articulate a legitimate, non-discriminatory reason for terminating Wilkerson. As previously stated, Boomerang claims that it discharged Wilkerson because he was insubordinate on April 21, 2011, by refusing to perform the tasks assigned to him.[12] Therefore, the question becomes whether Wilkerson has produced evidence sufficient to permit a reasonable trier of fact to find that Boomerang's proffered reason for terminating Wilkerson is pretextual. To establish pretext, Wilkerson asserts two arguments: first, that Boomerang supervisors had already made the decision to terminate Wilkerson before he was allegedly insubordinate; and second, that because he was not insubordinate on the day he was terminated, that could not be the real reason for his termination.

In support of his arguments, Wilkerson points to Barroso's testimony that on April 19, 2011, two days before Wilkerson was actually terminated for insubordination, "all of us in supervision were probably of [the] opinion" that Wilkerson needed to be terminated. This testimony, however, was made in reference to an April 19 e-mail from Cook, the department superintendent, telling Barroso that: "[I]f [Wilkerson] has another episode that he is caught on his phone, not doing his job, etc. he needs to be told to go, home, and return to HR, at a time given by you." Therefore, in context, Barroso's testimony shows nothing more than approval to

---

[12] The court notes that Wilkerson's alleged insubordination is the only legitimate, non-discriminatory reason Boomerang proffers for Wilkerson's termination. While an employer is permitted to terminate an employee who is unable to perform the essential functions of his job, Boomerang notably does not argue in this section that it terminated Wilkerson because of his inability to work as a mill operator. *See Burfield*, 51 F.3d at 590; *Parham*, 9 F.3d at 388-89; *Eldridge*, 2006 WL 2035654, at *10; *Guneratne,* 943 F. Supp. at 775; *Jenkins*, 16 S.W.3d at 441. Rather, Boomerang addresses Wilkerson's inability to perform the essential functions of his job only in its discussion of whether Wilkerson is a qualified individual under the ADA. Therefore, the court cannot impute a legitimate reason to Boomerang that has not been expressed.

discipline Wilkerson in the event of another instance of insubordination, which allegedly occurred on April 21, 2011. This evidence alone is insufficient to permit a reasonable finding of pretext.

Wilkerson also relies on his own testimony that he "did not refuse to wipe down equipment" and, thus, was not insubordinate on April 21, 2011. Wilkerson testified, however, that he did not sweep and mop after Barroso asked him to do so. Indeed, his response states that "he refused to mop and sweep because he could not do so safely." Nonetheless, Wilkerson argues that Barroso purposely assigned him to mop and sweep knowing that he would be unable to do so and would therefore refuse the demand, thus giving Boomerang a reason to discharge him. To the extent that Wilkerson's claim can be so construed, the court finds that Wilkerson has provided sufficient evidence of pretext to raise a genuine issue of material fact. Consequently, summary judgment is not warranted as to this claim.

III.    Conclusion

Accordingly, Boomerang's motion for summary judgment is granted in part and denied in part. There are no material facts in dispute that preclude summary judgment on Wilkerson's ADA claim for discrimination. Boomerang is therefore entitled to judgment as a matter of law on that claim. Wilkerson's ADA claim of retaliation and state law claim for workers' compensation retaliation, however, remain pending.

**Signed this date.**

**Oct 15, 2014**

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

34